# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LIQWD, INC. and OLAPLEX LLC, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> L'ORÉAL USA, INC., L'ORÉAL USA ) <br> PRODUCTS, INC., L'ORÉAL USA S/D, ) <br> INC., and REDKEN 5TH AVENUE NYC, ) <br> LLC, ) <br> ) <br> Defendants. ) | Civil Action No. 19-mc-35-JFB-SRF |

## **MEMORANDUM ORDER**

At Wilmington this **27th** day of **February, 2019**, the court having considered: (1) the motion to compel Gelest, Inc., Jonathan Goff, and Ed Kimble to comply with subpoenas, filed by defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc., and Redken 5th Avenue NYC, L.L.C. (collectively, "L'Oréal") (D.I. 2); and (2) L'Oréal's motion to compel Alan Gold to comply with a deposition subpoena (D.I. 3); and having considered the arguments presented during the February 25, 2019 hearing on the pending motions; IT IS HEREBY ORDERED THAT the motion to compel Gelest, Inc. ("Gelest"), Jonathan Goff, and Ed Kimble to comply with subpoenas is GRANTED-IN-PART, and the motion to compel Alan Gold to comply with the deposition subpoena is GRANTED-IN-PART, for the reasons set forth below.

**1.     Background.** On January 5, 2017, plaintiffs Liqwd, Inc. and Olaplex LLC (together, "Olaplex") brought a civil action in the District of Delaware for patent infringement (the "Underlying Action"). (C.A. No. 17-14-JFB-SRF, D.I. 2) In the Underlying Action, Olaplex alleges causes of action for infringement of United States Patent Nos. 9,498,419 ("the '419 patent") and 9,668,954 ("the '954 patent") (together, the "patents-in-suit"). (C.A. No. 17-

14, D.I. 636 at ¶¶ 90-138) The patents-in-suit are directed to formulations, kits, and methods of applying a bleaching mixture containing an active agent of maleic acid to the hair during treatments to rebuild disulfide bonds. (*Id.*, Ex. A at Abstract; Ex. B at Abstract)

2. Olaplex represents that its products are "created, mixed, manufactured and/or bottled" by Gelest. (D.I. 2, Ex. B at 10, 12) On October 23, 2018, L'Oréal served Gelest with a subpoena to produce documents reflecting the product formulas used by Gelest for the Olaplex products, seeking compliance by November 5, 2018. (*Id.*, Ex. E) Specifically, the subpoena requested the production of: (1) "All Communications with Plaintiffs or any other Person Concerning the Olaplex Products;" (2) "All Documents, Communications, and Things reflecting the ingredients of Olaplex Products;" (3) "All invoices You have issued to Plaintiffs Concerning the Olaplex Products;" and (4) "All product formulas You have created, received or used Concerning the Olaplex products." (*Id.*)

3. On November 1, 2018, counsel to Gelest objected to the subpoena on the grounds that it sought confidential trade secret information. (*Id.*, Ex. F) On November 7, 2018, L'Oréal met and conferred with Gelest and agreed to extend the protective order governing the Underlying Action to the proprietary information produced in response to the document subpoena. (*Id.* at ¶ 8; Ex. G) Gelest produced some documents responsive to the subpoena on November 12, 2018 and November 29, 2018, including invoices and communications between Gelest and Olaplex. (*Id.* at ¶ 9) However, the production did not include documents showing Gelest's manufacturing process, or the formulas or compositions used to make Olaplex's products. (*Id.*)

4. In its answer and counterclaims in the Underlying Action, L'Oréal asserted a defense of invalidity based on prior use pursuant to 35 U.S.C. § 102. (C.A. No. 17-14-JFB-SRF,

2

D.I. 650 at ¶¶ 255-59, 265-69) L'Oréal began serving subpoenas on certain stylists believed to have been early users of Olaplex's products, including Alan Gold, who was served with a subpoena on November 27, 2018. (D.I. 3, Ex. B) In correspondence dated December 11, 2018, counsel for the stylists refused to provide deposition dates in light of the stylists' objections to the subpoenas. (*Id.*, Exs. D & E)

5. On December 7, 2018, L'Oréal served subpoenas to testify at a deposition on Gelest, Jonathan Goff, and Ed Kimble, seeking testimony on the formulas and compositions used by Gelest to make the Olaplex products, and Gelest's communications with third parties regarding the same. (D.I. 2, Exs. H-J)

6. The depositions for Mr. Gold, Mr. Goff, Mr. Kimble, and Gelest were scheduled for December 18, 2018. (D.I. 3, Ex. B; D.I. 2, Exs. H-J) On December 11, 2018, Mr. Gold, Gelest, Mr. Goff, and Mr. Kimble objected to the deposition subpoena on the basis that it sought confidential, proprietary trade secret information. (D.I. 3, Ex. E; D.I. 2, Ex. K) During a December 12, 2018 hearing, the court indicated that it would enter an order compelling subpoenaed third parties to appear for depositions, if necessary.[1] (12/12/18 Tr. at 141:16-142:7) Fact discovery closed on December 21, 2018. (C.A. No. 17-14-JFB-SRF, D.I. 192 at ¶ 3)

7. On December 26, 2018, L'Oréal met and conferred with Gelest to address Gelest's concerns about producing confidential trade secret information. (D.I. 2 at ¶ 15) Gelest indicated it would not supply the requested information without Olaplex's consent, and Olaplex

---

[1] The court's comments during the December 12, 2018 hearing did not amount to a conclusive finding of relevance, as the subpoenas themselves were not before the court at that time. Earlier rulings of this court regarding third party discovery were directed to amendments to the scheduling order to permit the defendants additional time to pursue third parties for discovery arguably relevant to L'Oréal's defenses of invalidity and non-infringement, subject to the time limit remaining of 17 hours for fact deposition discovery. (D.I. 610 at ¶ 6) No rulings were made on the contours of the third party discovery.

3

responded on January 7, 2019 that it would not withhold consent on confidentiality grounds. (*Id.* at ¶ 16; Ex. O) L'Oréal narrowed the document requests and deposition topics to Gelest, but Gelest's counsel responded on January 15, 2019 that it needed to confirm with Olaplex's counsel regarding consent, and there was no availability for depositions over the next two weeks. (*Id.*, Ex. O) Gelest never responded to L'Oréal's request for available dates. (*Id.* at ¶ 16)

**8.** On January 4, 2019, L'Oréal moved the court to modify the case schedule in the Underlying Action to extend the deadline to complete third-party discovery. (C.A. No. 17-14-JFB-SRF, D.I. 596) On January 14, 2019, the court modified the case schedule in the Underlying Action to allow L'Oréal to take discovery from various third parties on or before January 25, 2019. (C.A. No. 17-14-JFB-SRF, D.I. 610) On January 19, 2019, Mr. Gold confirmed his intention to stand by his objections to the subpoena. (D.I. 3 at ¶¶ 17-18; Ex. N)

**9.** On January 30, 2019, counsel for Gelest conferred with counsel for L'Oréal in an effort to resolve the motion to compel. (D.I. 28 at ¶ 3) Gelest agreed to produce three sample batch records from 2016 to 2018, and one sample batch record from October 2014. (*Id.*)

**10.** Trial in the Underlying Action is set for July 29, 2019. (C.A. No. 17-14-JFB-SRF, D.I. 394)

**11. Analysis.** Rule 45 of the Federal Rules of Civil Procedure addresses third party compliance with a subpoena. Fed. R. Civ. P. 45. The district court where compliance is required decides disputed issues relating to the subpoena except upon transfer to the issuing district where the underlying litigation is pending. *See* Fed. R. Civ. P. 45(f). In extending the deadline for the defendants to serve subpoenas on third parties residing in other districts, the court made clear that it would not permit the expiration of the deadline for third party discovery to be artfully used

as a means to avoid compliance with a timely issued subpoena, particularly when third party unavailability contributed to the loss of time for completion of the discovery. (D.I. 610 at ¶ 6)

**12.    Motion to compel Gelest and its employees to comply with subpoenas.** In support of its motion to compel, L'Oréal contends that the information it seeks from Gelest regarding the formulation and manufacture of Olaplex's products is relevant and narrowly tailored, and any confidentiality concerns are mooted by the applicability of the stipulated protective order. (D.I. 2 at 9-13) L'Oréal did not provide temporal parameters for the documents it seeks, nor has it narrowly tailored a request for additional information based upon the batch records already produced by Gelest.

**13.**    In response, Gelest, Goff, and Kimble argue that they should be relieved under Rule 45 from providing any additional discovery because the document requests are duplicative of the batch records for bisaminopropyl diglycol dimaleate, which were already produced,[2] and the production of additional documents beyond the sampling of batch records would be voluminous and burdensome. (D.I. 16 at 1-2) Gelest did not produce a declaration or cite support for its position regarding the volume and burden of further production. Gelest further argues that depositions of Gelest, Goff, and Kimble to authenticate the batch records would be redundant and unnecessary in light of Gelest's offer to supply an authenticating declaration in support of the batch records. (D.I. 16 at 1-2) Moreover, Gelest contends that L'Oréal has failed to establish how the requested discovery relating to Olaplex's products is relevant to the litigation accusing L'Oréal's products of infringement. (*Id.* at 3) Olaplex joins in Gelest's response, incorporating by reference the joinder to Alan Gold's response. (D.I. 19)

---

[2] During the hearing on February 25, 2019, Gelest's counsel produced under seal copies of the batch records to the court without numerical identification, such as Bates numbers.

5

**14.** During the course of discovery, Olaplex represented that its products are "created, mixed, manufactured and/or bottled" by Gelest and that it does not know how Gelest makes the Olaplex products. (D.I. 2, Ex. B at 10) Eric Pressley, an inventor of the asserted patents and Olaplex products, testified at his deposition that Gelest makes the active ingredient used in the Olaplex products. (*Id.*, Ex. C at 62:25-65:12) L'Oréal's efforts to discover the product formulas and manufacturing process of the Olaplex products were met with cross assertions by Olaplex and Gelest that such information was the trade secret of the other.[3] Therefore, L'Oréal was unable to obtain product formulas and manufacturing information until January 30, 2019, when Gelest agreed to produce a sample of three batch records for the Olaplex products from 2016 to 2018, and one additional batch record from October 2014. (D.I. 28 at ¶ 3; Ex. B)

**15.** L'Oréal's efforts to discover the composition of the Olaplex products at the time of use is reasonable and relevant to the claims and defenses surrounding alleged infringement

---

[3] When L'Oréal asked Gelest to provide information regarding the manufacture of Olaplex's products in response to the October 23, 2018 subpoena, Gelest objected on November 1, 2018 on the grounds that it sought disclosure of confidential trade secret information. (D.I. 2, Ex. F) L'Oréal met and conferred with Gelest on November 7, 2018 to provide assurances that the stipulated protective order entered in the Underlying Action would govern the disclosure of confidential trade secret information responsive to the subpoena. (D.I. 2 at ¶ 8; Ex. G) Gelest's subsequent production of documents responsive to the subpoena on November 12 and November 29, 2018 did not include documents showing the manufacturing process or the formulas or composition of Olaplex's products. (D.I. 2 at ¶ 9) For this reason, L'Oréal served subpoenas to testify on Gelest, Mr. Goff, and Mr. Kimble on December 7, 2018. (D.I. 2, Exs. H-J) Gelest objected to the deposition subpoenas on December 11, 2018, citing confidentiality concerns. (D.I. 2, Ex. K) On December 20, 2018, Gelest reiterated that the information was a trade secret belonging to Olaplex. (D.I. 2, Ex. M) On December 26, 2018, L'Oréal requested that Olaplex provide its consent to allow Gelest to reveal trade secret information regarding the manufacture of Olaplex's products. (D.I. 603 at 2 n.1) Olaplex did not respond until January 7, 2019, indicating that it would not withhold consent. (*Id.*) On January 9, 2019, L'Oréal notified Gelest that Olaplex provided its consent to the production of documents, and Gelest's counsel responded on January 15, 2019, indicating that he would need to confirm with Olaplex's counsel that Olaplex was not withholding consent. (D.I. 2, Ex. O)

and invalidity, including prior use.[4] Gelest and Olaplex have largely avoided addressing relevance except to highlight the rejection of a prior use defense by L'Oréal in corresponding patent litigation in the United Kingdom (the "U.K. litigation"). The resistance to the discovery has been focused instead on the timeliness of the request and the pressure of encroaching deadlines in the scheduling order.

16. L'Oréal's motion to compel Gelest, Goff, and Kimble to comply with the subpoenas is denied with respect to the request for email correspondence predating April 2015. During the February 25, 2019 hearing, counsel for Gelest represented that Gelest maintained correspondence for only three years. Consequently, Gelest is unable to produce documents responsive to L'Oréal's request for emails predating April 2015.

17. L'Oréal's request for the production of additional batch records is also denied. L'Oréal acknowledges that the four batch records already produced by Gelest contain information responsive to the requests for documents concerning the ingredients, formulations, chemicals, compounds, compositions, solutions, and mixtures of Olaplex's products. (D.I. 27 at 1; D.I. 2, Ex. J at ¶¶ 2-3) Although Gelest possesses additional batch records relating to the Olaplex products, Gelest maintains that the active ingredient used in Olaplex's products has not changed during the time Gelest has manufactured Olaplex's products.[5] (D.I. 28 at ¶ 3) Additional information regarding the manufacture of Olaplex's products by Gelest prior to, and

---

[4] "An applicant may not be granted a patent for an invention that was 'in public use . . . in this country, more than one year prior to the date of the application for patent in the United States.'" *Delano Farms Co. v. Cal. Table Grape Comm'n*, 778 F.3d 1243, 1247 (Fed. Cir. 2015) (quoting 35 U.S.C. § 102(b)). "The proper test for the public use prong of the section 102(b) statutory bar is whether the purported use was accessible to the public or was commercially exploited." *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1380 (Fed. Cir. 2005).

[5] During the February 25, 2019 hearing, Olaplex confirmed that the active agent has been the same throughout its relationship with Gelest, citing to its verified Interrogatory responses.

7

contemporaneously with, the release of the Olaplex products in June 2014 may be obtained via deposition testimony for the reasons set forth in paragraph 18, *infra*.

**18.** L'Oréal's motion to compel is granted to the extent that L'Oréal seeks deposition testimony of a 30(b)(6) witness to test Gelest's representation that the active ingredient in Olaplex's product has not changed during the course of Gelest's business relationship with Olaplex. The deposition shall be limited to no more than four (4) hours of questioning, and it shall be completed on or before March 7, 2019. Deposition topics are limited to L'Oréal's identified categories pertaining to: (1) Gelest's efforts to locate documents responsive to the October 23, 2018 subpoena; (2) communications with Olaplex or any other person concerning the Olaplex products, including instructions, guidance, feedback, or suggestions from Olaplex or to Olaplex concerning the processes for making, manufacturing, mixing, developing, and/or using ingredients, formulations, compounds, compositions, chemicals, and the like; (3) the ingredients, formulations, chemicals, compounds, compositions, solutions, mixtures, and the like of Olaplex products and used to create, make, manufacture, and produce the Olaplex products; (4) the work Gelest performed and does perform for Olaplex concerning the Olaplex products; and (5) formulas, formulations, compositions, mixtures, solutions, and the like that Gelest has considered, developed, created, received, supplied, and/or used concerning the Olaplex products. (D.I. 2 at 11; Ex. H) This testimony is relevant to L'Oréal's prior use defense.[6]

**19.** L'Oréal's request to depose Mr. Goff and Mr. Kimble is denied. This testimony would be cumulative of the deposition testimony proffered during the 30(b)(6) deposition.

---

[6] During the February 25, 2019 hearing, counsel for Olaplex represented that an order recently entered in the U.K. litigation rejected L'Oréal's prior use invalidity defense, and he suggested that this order may negate L'Oréal's assertion of the same defense in the Underlying Action. The order entered in the U.K. litigation, and issues of collateral estoppel potentially arising from that order, are not presently before the court.

8

Gelest may designate Mr. Goff, Mr. Kimble, or both as 30(b)(6) deponents if these individuals have information responsive to the deposition topics.

**20.** L'Oréal's request for sanctions in the form of fee and cost shifting pursuant to Rule 37(a)(5)(A) is also denied. Rule 37 requires the court to award fees to the prevailing party on a motion to compel unless, among other things, "(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). The court did not grant L'Oréal's motion to compel wholesale because Gelest has already produced documents responsive to the subpoena. As a third party, Gelest's efforts to minimize its burden in this contentious litigation are not wholly unreasonable. Under these circumstances, compelling a deposition of limited duration prior to the deadline for dispositive motions is sufficient to address L'Oréal's need for additional discovery, and an award of sanctions is not warranted.

**21. Motion to compel Alan Gold to comply with subpoena.** L'Oréal asks the court to compel Mr. Gold's compliance with the subpoena, and also to award fees and costs associated with bringing the instant motion to compel. (D.I. 1-2) L'Oréal argues that it has a need for documents and testimony concerning the prior use of Olaplex's products by hair stylists in relation to L'Oréal's invalidity defense. (*Id.* at 5-6)

**22.** In response, Mr. Gold contends that L'Oréal's motion to compel is moot because the discovery deadline has passed, and the information sought is not relevant to the Underlying Action. (D.I. 13 at 12-18) ("Defendants have not articulated how Mr. Gold's testimony would assist in resolving the issues in the case beyond a conclusory assertion that her [*sic*][7] testimony

---

[7] For clarity of the record, pending before this court is a motion to compel compliance with the subpoena directed to Mr. Gold. (D.I. 3) References to Ms. Vasquez, presumably another stylist who is the subject of a separate subpoena, have been treated as references to Mr. Gold for

9

may be relevant to an invalidity defense.") According to Mr. Gold, L'Oréal should obtain the documents from Olaplex or from Mr. Gold's public social media instead of burdening third parties with the requests. (*Id.* at 18-20, 23-26) Mr. Gold posits that L'Oréal has known about his existence since at least December 2017 and could have sought the requested discovery sooner. (*Id.* at 22) Mr. Gold explains that compliance with the subpoena would require him to cancel appointments with clients, which would result in a significant loss of income, harm to his reputation, and potentially the permanent loss of affected clients. (*Id.* at 24) Mr. Gold further requests an award of the fees and costs expended on briefing the instant motion. (*Id.* at 26-27)

23. Olaplex joins in Mr. Gold's response, alleging that discovery is closed in the Underlying Action and the court has established that no further extensions will be granted. (D.I. 18 at 1) Olaplex further argues that L'Oréal has already taken the depositions of other nonparty stylists similarly situated to Mr. Gold, and any discovery obtained from Mr. Gold would be duplicative. (*Id.* at 2-4) Olaplex suggests that L'Oréal continues to pursue Mr. Gold's testimony not to obtain testimony regarding his alleged use of Olaplex's products prior to market launch, but rather to obtain information about his participation in the litigation proceeding in the United Kingdom. (*Id.* at 4)

24. L'Oréal's motion to compel Mr. Gold's compliance with the subpoena is granted-in-part. For the reasons set forth below, L'Oréal may take a deposition of Mr. Gold, limited to no more than two (2) hours, on or before March 7, 2019.[8] L'Oréal's request to compel the

---

purposes of the pending motion. (D.I. 13 at 21) ("All of these factors supporting limiting L'Oréal USA's ability to burden Ms. Vasquez are present here and shall be discussed below.").
[8] During the February 25, 2019 hearing, counsel confirmed that Mr. Gold's counsel agreed to a deposition limited to no more than two hours. L'Oréal did not accept the offer of Mr. Gold's counsel due to concerns that the deposition would be subject to excessive objections by Mr. Gold's counsel. Pursuant to Rule 30(c)(2), "[a]n objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer

production of additional documents from Mr. Gold is granted with respect to narrowed Document Request Nos. 6 and 7 seeking "All Documents and Communications Concerning any agreement You entered into relating to any of the Olaplex Products," and "All Documents and Communications Concerning any Compensation You were offered or received by either of the Plaintiffs, or anyone on behalf of either of the Plaintiffs, during the Relevant Time Period relating to disputes between Plaintiffs and Defendants or the Olaplex Products." (D.I. 3, Ex. N at 2)

**25.** The record before the court establishes that Mr. Gold possesses information relevant to L'Oréal's prior use and prior sale defenses. (D.I. 3, Ex. K at 2) Documents produced in the Underlying Action show that Mr. Gold was an early user of Olaplex's products prior to the June 2014 market launch. (D.I. 3 at 2; D.I. 20 at 1) Limited testimony regarding the specifics of Mr. Gold's use of the Olaplex products is therefore relevant to L'Oréal's invalidity defenses regarding whether the claimed invention was used publicly or sold before the effective filing date of the patents-in-suit. *See* 35 U.S.C. §§ 102, 103. Limiting Mr. Gold's deposition testimony to no more than two hours will minimize the disruption to Mr. Gold's schedule and will disincentivize L'Oréal from retreading ground covered in earlier depositions of similarly-situated stylists. Moreover, L'Oréal is cautioned against pursuing questions regarding the litigation proceeding in the United Kingdom, which would fall outside the scope of the subpoena, exceed the scope of the relief granted by the court in the instant Memorandum Order, and contravene L'Oréal's own representations regarding the intended purpose of the deposition. (D.I. 3, Ex. K at

---

only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). The court has no reason at this time to question counsel's compliance with the Federal Rules.

11

2 n.2) ("Contrary to Plaintiffs' allegations, Defendants are seeking discovery for this case, not any other case.").

26. The timing of the subpoena and the close of fact discovery should not bar L'Oréal from taking limited deposition testimony of Mr. Gold. L'Oréal served the subpoena on November 27, 2018, nearly a month prior to the close of fact discovery, and sought an extension of the discovery deadline when it became clear that Mr. Gold and others would not be available for deposition prior to the December 21, 2018 discovery cutoff. (D.I. 3 at ¶ 5; Ex. B)

27. Finally, for the reasons previously stated at ¶ 20, *supra*, an award of fees and costs is not warranted under the present circumstances.

28. **Conclusion.** In view of the foregoing analysis, L'Oréal's motion to compel Gelest to comply with subpoenas is granted-in-part. (D.I. 2) On or before **March 7, 2019**, Gelest shall produce a 30(b)(6) witness for a deposition limited to no more than **four (4) hours** to answer questions regarding the formulation of the Olaplex products as outlined in ¶ 18, *supra*. L'Oréal's motion to compel is denied to the extent that it seeks the production of additional documents from Gelest and documents and deposition testimony from Mr. Goff and Mr. Kimble. L'Oréal's motion to compel Alan Gold to comply with the subpoena is granted-in-part. (D.I. 3) Mr. Gold shall produce documents responsive to the narrowed categories 6 and 7, as identified at ¶ 24, *supra*, and shall appear for a deposition limited to no more than **two (2) hours** on or before **March 7, 2019**. L'Oréal's motion to compel Mr. Gold to comply with the subpoena is denied in all other respects. L'Oréal's requests for sanctions, as they pertain to both motions, are denied.

29. This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order.

Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to ten (10) pages each.

**30.** The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, www.ded.uscourts.gov.

                                                      Sherry R. Fallon
                                                      United States Magistrate Judge